**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gerald Henry BELSKY, Marsha Brawner, Susan Klebe, James Carr and Connie Carr, Defendants-Appellants.**

**No. 85–8689.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1986.

Rehearing and Rehearing En Banc
Denied Oct. 27, 1986.

Reid W. Kennedy, Marietta, Ga., for defendants-appellants.

Julie Carnes, Asst. U.S. Atty., Atlanta, Ga., and Norman D. Menegat, U.S. Postal Service, Washington, D.C., for plaintiff-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and DUMBAULD *, Senior District Judge.

TJOFLAT, Circuit Judge:

Appellants were convicted of violating the federal regulation prohibiting solicitation of contributions on postal premises and of failing to comply with signs of a prohibitory nature or with the directions of postal authorities that they cease from soliciting on postal property. Appellants admitted the essential elements of the offenses, but contended that the regulations were invalid under the first amendment. The district court rejected appellants' first amendment challenge to the regulations and, following a bench trial, entered verdicts of guilty as to each defendant. We affirm.

## I.

Appellants are members of the National Democratic Policy Committee. They set up card tables on several different postal properties and attempted to solicit contributions from, or sell memberships to, passersby.[1]

The post offices in question were all set back from the public road and were designed so that patrons could drive from the city street, park in the postal parking lot, and walk from the parking lot to the building on a connecting walkway. These ingress and egress walkways were on postal property. Appellants set up their card tables on these walkways, in front of or to the side of the main entrance of the buildings.

At issue in this case is the federal regulation prohibiting solicitation on postal property. The regulation provides in pertinent part:

(h) *Soliciting, electioneering, collecting debts, vending, and advertising.* (1) Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, commercial soliciting and vending, and displaying or distributing commercial advertising on postal premises are prohibited.

39 C.F.R. § 232.1(h)(1) (1985). This regulation was posted inside the postal facilities in question. Another regulation requires that "[a]ll persons in and on [postal] property shall comply with official signs of a prohibitory or directory nature, and with the directions of security force personnel or other authorized individuals." 39 C.F.R. § 232.1(d) (1985). Appellants were informed by postal authorities that they were violating the regulation prohibiting solicitation, but they refused to terminate their activity.[2]

A twenty-six count information was returned against the appellants in the United States District Court for the Northern District of Georgia. In each odd-numbered count, two of the five appellants were charged with soliciting contributions on postal property, in violation of 39 C.F.R. § 232.1(h)(1). The even-numbered counts

---

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. There were five defendants in the district court, each of whom has appealed from an adjudication of guilt. The practice of appellants was to have two members of their organization on postal premises when they conducted solicitation activities. Thus, various combinations of the five defendants were charged in various counts of the information.

2. The regulations do not prohibit the distribution of literature on postal property or the exercise of free speech rights in the absence of financial solicitation.

charged a failure to comply with signs of a prohibitory nature or with the directions of postal authorities to cease solicitation activities, in violation of 39 C.F.R. § 232.1(d). The district court adjudged the appellants guilty as charged as to twenty-five of the twenty-six counts, and imposed a fine for each violation.[3] On appeal, appellants press their first amendment defense, contending that the regulation prohibiting solicitation of contributions on postal property is invalid under the Constitution.[4]

## II.

■ It is clear that the solicitation of funds is an activity that may receive first amendment protection. *See Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). It is also undisputed that, under appropriate circumstances, the government may, consistent with the Constitution, limit the exercise of first amendment rights on public property. "[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Service v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981). The question in this case is whether the restriction prohibiting solicitation of funds on postal property is a permissible one.

■ The Supreme Court has established that the ability of the government to restrict first amendment activity on public property depends upon the type of forum involved. *See Cornelius v. NAACP Legal Defense & Educational Fund*, —— U.S. ——, ——, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985); *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 44–46, 103 S.Ct. 948, 954–55, 74 L.Ed.2d 794 (1983). As to traditional public forums, such as streets and parks, the government may enforce content-based exclusions only if "necessary to serve a compelling state interest and [if] narrowly drawn to achieve that end," and may enforce content-neutral, time, place, and manner regulations only where they "are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Education Association*, 460 U.S. at 45, 103 S.Ct. at 955. A similar standard applies to property that is not a traditional public forum, but which has been opened by the government as a place for expressive conduct. *Id.* at 45–46, 103 S.Ct. at 955.[5] Finally, for nonpublic forums, the government may enforce restrictions on first amendment conduct as long as they are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 46, 103 S.Ct. at 955; *see Cornelius*, —— U.S. at ——, 105 S.Ct. at 3448.

■ A public forum is one that "by long tradition or by government fiat [has] been devoted to assembly and debate." *Perry Education Association*, 460 U.S. at 45, 103 S.Ct. at 954. Streets and parks, as we have noted, are the prime examples. In *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), the Supreme

3. The district court entered a judgment of acquittal on count twenty, apparently because the Government failed to adduce any proof as to that count.

4. Appellants also contend that they could not lawfully be sentenced on the even-numbered counts because those counts covered the very same acts as the odd-numbered counts. This argument was not raised in the district court, where appellants argued that because the first amendment provided a defense to the odd-numbered counts, there could be no violation of the even-numbered counts. An argument may not be raised for the first time on appeal. *King v. United States*, 565 F.2d 356 (5th Cir.1978). In

any event, appellants' argument lacks merit because the even-numbered counts required proof of facts not required for the odd-numbered counts. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Wood*, 780 F.2d 955, 962–63 (11th Cir.1986).

5. Examples of such limited public forums include a municipal auditorium dedicated to expressive activities or school facilities opened for the use of student groups. *See Cornelius v. NAACP Legal Defense & Educ. Fund*, —— U.S. ——, ——, 105 S.Ct. 3439, 3449–50, 87 L.Ed.2d 567 (1985).

Court held that the public, municipal sidewalks surrounding the Supreme Court Building fit within the public forum category. The Court stated that these sidewalks were indistinguishable from other sidewalks in the city and should be treated as such. *Id.* at 179, 103 S.Ct. at 1708. Like the streets, sidewalks have been traditionally open for expressive activities. *See id.*[6] The Court expressly limited its holding to the public sidewalks surrounding the perimeter of the building and declined to express a view as to the building itself, or the rest of the grounds, which, although publicly owned, have "not been traditionally held open for the use of the public for expressive activities." *Id.* at 178–83, 103 S.Ct. at 1707–10.

■ We conclude that, under applicable Supreme Court precedent, the ingress and egress walkways to the post office buildings are a nonpublic forum.[7] These walkways are intended to accommodate traffic to and from the post office for the conduct of postal business and have not traditionally been sites for expressive conduct.[8] These walkways are distinguishable from the public sidewalks surrounding the buildings, which remain open for expressive conduct.

■ Because the postal walkways are a nonpublic forum, the regulation restricting solicitation must be reasonable and viewpoint neutral. *Cornelius,* —— U.S. at ——, 105 S.Ct. at 3451. In this case, all parties agree that the regulation is viewpoint neutral; it bans all solicitation without regard to viewpoint. Thus, we must assess whether the regulation is reasonable in light of the purpose the property is intended to serve. It need not be "the most reasonable or the only reasonable limitation," nor must it be narrowly tailored or serve a compelling government interest. *Id.* at ——, 105 S.Ct. at 3453.

■ The regulation in question easily passes muster under this standard. It is reasonable to conclude that permitting solicitation activities would disrupt the flow of traffic into and out of postal facilities. Such activities could contribute to parking congestion, make access into the postal buildings difficult, and generally impede the use of the properties for their intended purpose, which is to provide postal services. If solicitation were permitted on postal grounds, it is unlikely that appellants' group would be the only organization to take advantage of it; the result could be considerable disruption of postal activities.

■ The distinction drawn by the regulation between the distribution of literature and the solicitation of funds is also a reasonable one.[9] Soliciting funds is an inherently more intrusive and complicated activity than is distributing literature. A passerby can take a pamphlet and keep walking. Soliciting funds, on the other hand, can require an extended encounter. It might be necessary to make correct change, provide a receipt, or engage in a prolonged explanation of the organization and its activities. In sum, solicitation is more time

6. The Court distinguished *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), where the streets and sidewalks in question were on a military base, and thus clearly demarcated from municipal sidewalks.

7. *Cf. National Anti-Drug Coalition v. Bolger,* 737 F.2d 717, 722–23 (7th Cir.1984) (refusing to decide whether postal walkways are public or nonpublic forum, but upholding anti-solicitation regulation under either standard).

8. Nor does this property fit within the intermediate category of property that is not traditionally a public forum, but has been opened by the government for expressive activity. "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a non-traditional forum for public discourse." *Cornelius v. NAACP Legal Defense & Educ. Fund,* —— U.S. ——, ——, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985).

9. One factor bearing on the reasonableness of a restriction is the existence of alternate channels of communication. *Perry Educ. Ass'n,* 460 U.S. at 53, 103 S.Ct. at 959. In this case, the regulations do not prohibit the distribution of literature. *See supra* note 2. The literature can inform the readers how to contact the organization and contribute funds if they so desire. In addition, the municipal sidewalks and streets adjoining the postal buildings remain open as public forums for expressive activity.

consuming and is likely to cause greater confusion and disruption. *See Heffron,* 452 U.S. at 665, 101 S.Ct. at 2573 (Blackmun, J., concurring). Finally, with a multitude of postal facilities throughout the country, the government could reasonably have concluded that a uniform, blanket prohibition on solicitation was necessary, rather than requiring each individual postal site to police whether the solicitation was occurring too close to the entrance of the facility, whether the patrons were actually being disrupted, whether there was room to walk past the solicitation table, and any number of related inquiries.

### III.

We hold that the federal regulation prohibiting solicitation of contributions on postal property does not violate the first amendment. Appellants admittedly violated that regulation. Their convictions are, accordingly,

AFFIRMED.