[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 4, 2007
THOMAS K. KAHN
CLERK

No. 05-16325
Non-Argument Calendar

_____

D. C. Docket No. 05-00175-CR-T-27-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CRUZ VALDOVINOS MANCILLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(April 4, 2007)**

Before ANDERSON, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Cruz Valdovinos Mancilla appeals his 294-month sentence, which was

imposed after he pled guilty to conspiring to possess with the intent to distribute 50

grams or more of methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(A)(viii)

and § 846, and reentry of a removed alien whose removal was subsequent to a conviction for commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). On appeal, Mancilla argues that the district court failed to provide him or his counsel the opportunity to object after imposition of his sentence, in violation of United States v. Jones, 899 F.2d 1097, 1102 (11th Cir. 1990), overruled in part on other grounds by United States v. Morrill, 984 F.2d 1136, 1137 (11th Cir. 1993). After careful review, we vacate and remand for further proceedings consistent with this opinion.

The relevant facts are these. On April 27, 2005, Mancilla and his codefendants, Azucena Baltazar Borja and Irma Valle Ramirez, were charged in a multi-count indictment. Mancilla was charged with: (1) conspiracy to possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) and 846 (Count One); (2) possession with the intent to distribute and willingly aiding and abetting the possession of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2 (Count Two); and (3) reentry of a removed alien whose removal was subsequent to a conviction for commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2) (Count Four). Pursuant to a written plea agreement, Mancilla pled guilty to Counts One and Four and the

government agreed to dismiss Count Two.  In exchange for Mancilla's guilty plea,

the government also agreed not to oppose Mancilla's request for a two-level

reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), and to

file a motion for an additional one-level downward adjustment if Mancilla

complied with the provisions of U.S.S.G. § 3E1.1(b).[1]

The plea agreement further stated that the government agreed to

> make known to the Court and other relevant authorities
> the nature and extent of defendant's cooperation and any
> other mitigating circumstances indicative of the
> defendant's rehabilitative intent by assuming the
> fundamental civic duty of reporting crime.  However, the
> defendant understands that the government can make no
> representation that the Court will impose a lesser
> sentence solely on account of, or in consideration of,
> such cooperation.

The plea agreement did not mention any instances of Mancilla's cooperation.  The

government reserved the right to report to the district court and the probation office

> all information concerning the background, character,
> and conduct of the defendant, to provide relevant factual
> information, including the totality of the defendant's
> criminal activities, if any, not limited to the count(s) to
> which defendant pleads, to respond to comments made

---

[1]Upon motion by the government, defendants qualify for one additional level reduction for acceptance of responsibility if, <u>inter alia</u>, they assisted authorities by timely providing information to the government about their own misconduct or by timely notifying authorities of an intent to plead guilty, thereby permitting the government to avoid preparing for trial and the court to allocate its resources efficiently.  <u>See</u> U.S.S.G. § 3E1.1(b).

by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.

The government also reserved the right to make any recommendation it deemed appropriate regarding the disposition of the case, subject to any limitations contained in the plea agreement. Mancilla acknowledged that the government's recommendations incorporated within the plea agreement were not binding on the court, and that the court's failure to accept the government's recommendations would not constitute grounds for withdrawal of his guilty plea or a claim for breach of the agreement. Assistant U.S. Attorneys Kelley C. Howard and Joseph K. Ruddy signed the plea agreement.

At Mancilla's change-of-plea hearing, Mancilla testified, through an interpreter, that the plea agreement had been translated to him, and that he reviewed it with his attorney. The magistrate judge explained the terms of the plea agreement and the charges in the indictment, and Mancilla stated that he understood. Mancilla also indicated that no one had attempted to force him to plead guilty, and no one promised him anything in exchange for his guilty plea. He further agreed with the factual basis for his plea as contained in the plea agreement.

The magistrate judge explained the maximum possible penalties, the sentencing procedure, and the sentence-appeal waiver, and Mancilla stated that he

4

understood. Finally, the magistrate judge advised Mancilla of the rights he was waiving by pleading guilty. After finding that Mancilla's guilty plea was knowing and voluntary, the magistrate judge recommended that the district court accept his guilty plea. The district court accepted the plea and Mancilla then proceeded to sentencing.

The presentence investigation report ("PSI") stated that Mancilla, a citizen of Mexico, was convicted in a Minnesota state court of selling cocaine in 1994. In 1996, after Mancilla served his sentence for the Minnesota conviction, he was deported to Mexico. On April 7, 2005, a confidential informant ("CI") with the Polk County Sheriff's Office ("PCSO") made arrangements for Mancilla to deliver five pounds of methamphetamine to the CI in Florida. Mancilla and his two codefendants were stopped by the PCSO on a highway in Florida on the way to meet the CI. The officers searched the defendants and found a handgun, separate ammunition, 7.2 pounds of methamphetamine, and more than $5,000 in cash.

Again, according to the PSI, after being advised of his Miranda[2] rights, on April 9, 2005, Mancilla told law enforcement officers that an individual named Carlos had contacted him about the drug deal, Carlos's cousin in Texas arranged the deal. Mancilla picked up the methamphetamine five days earlier from two

---

[2]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 15 L.Ed.2d 694 (1966).

individuals at a Chili's restaurant in Dallas. Carlos later told Mancilla to deliver the drugs to Florida. In a second post-Miranda interview, on April 19, 2005, Mancilla informed law enforcement officers that he had picked up the package from an unknown individual in Houston, with instructions to deliver it to Carlos in Florida. Mancilla was supposed to collect $20,000 for his participation in the conspiracy, and he had intended to give Ramirez and her husband $10,000. Mancilla had recently met Ramirez and her husband, who were the owners of a restaurant in Sulfur, Texas, and they were both aware that they would be providing transportation to Mancilla for the delivery of drugs.

After applying a three-level reduction for acceptance of responsibility because Mancilla made the post-Miranda statements acknowledging his criminal conduct and providing logistical information to agents, the PSI recommended a total offense level of 38. With a criminal history category II, Mancilla's Guidelines range was 262 to 327 months' imprisonment.

At the sentencing hearing, Assistant U.S. Attorney Jeffrey Downing represented the government and stated that he was standing in for Assistant U.S. Attorney Howard. The district court first adopted the factual statements contained in the PSI and found that the Guidelines range was 262 to 327 months' imprisonment. The court then stated, "I'll consider matters in mitigation, including

any statements that the defendant may wish to make." In response, Mancilla's attorney argued that the court should impose the 120-month mandatory minimum sentence for several reasons, including that Mancilla was a married man who supported two small children, that he had a fifth-grade education and no criminal history other than the Minnesota conviction, and that he played a minor role in the charged crimes. Defense counsel highlighted Mancilla's history and lifetime and argued "it's a sad commentary of someone who is in the lowest economic strata in Mexico, trying to-- from that third world country --  do something better for his family."

Finally, defense counsel highlighted Mancilla's two post-Miranda statements, wherein Mancilla provided information about the charged offense and the other individuals involved in the scheme. Also at the sentencing hearing, the district court heard Mancilla's statement of remorse. The government requested the court to impose a sentence within the Guidelines range. After hearing the government's argument, the district court asked defense counsel if he had "anything else," to which counsel responded he did not.

The court then found that "the circumstances of this offense do not cry out for sympathy" because (1) Mancilla was found with 7 pounds of 97 percent pure methamphetamine; (2) he had a gun and his two children in the car when he was

7

arrested; and (3) he had previously served a substantial sentence for cocaine trafficking in state prison. The court also found that the circumstances of the offense required a "significantly long sentence" to satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a), including the need for the sentence to reflect the seriousness of the offense, to provide adequate deterrence, and to take into account Mancilla's background. Accordingly, the district court imposed a 294-month term of imprisonment on Count One and a concurrent 240-month term on Count Four. After imposition of the sentence, the court did not elicit objections, or any further argument, from either party. This appeal followed.

On appeal, it is undisputed that at the sentencing hearing, the government did not mention Mancilla's cooperation, consisting primarily of two post-<u>Miranda</u> statements to law enforcement which were detailed in the PSI and mentioned by defense counsel during his argument for a below-Guidelines sentence. Mancilla argues that the district court erred by failing to elicit further objections, including the government's alleged breach of the plea agreement due to its failure to mention Mancilla's cooperation, after imposition of sentence, in violation of <u>Jones</u>.[3]

---

[3]On appeal, Mancilla also argues the government breached the plea agreement by failing to inform the court, at the sentencing hearing, of his cooperation and substantial assistance, as required by paragraph 9(a) of the plea agreement, which stated the government agreed to "make known to the Court and other relevant authorities the nature and extent of defendant's cooperation . . .." Given our dispositon of the <u>Jones</u> claim, however, we will not consider this argument at this juncture.

8

In Jones, we held that after imposing sentence, a district court must give the parties an opportunity to object to the court's ultimate findings of fact, conclusions of law, and the manner in which the sentence is pronounced, and must elicit a full articulation of the grounds upon which any objection is based. See 899 F.2d at 1102. This requirement serves "the dual purpose of permitting the district court to correct on the spot any error it may have made and of guiding appellate review."[4] Id. Under the Jones rule, when a district court fails to elicit objections after imposing a sentence, we normally vacate the sentence and remand to the district court to give the parties an opportunity to present their objections. Id. at 1103. A remand is unnecessary, however, if the record on appeal is sufficient to enable review. United States v. Cruz, 946 F.2d 122, 124 n. 1 (11th Cir. 1991).

Here, the district court did not elicit objections after it imposed Mancilla's sentence. Although the government urges that the district court's pre-sentencing query "anything further" satisfied Jones, we disagree in light of our decision in United States v. Snyder, in which we held that the district court's inquiry of whether there was "anything further," which took place after the court imposed Snyder's sentence, was not sufficient to satisfy Jones. United States v. Snyder, 941

---

[4] The government does not contend, and our own research has not revealed any caselaw suggesting, that Jones is inapplicable to claims alleging that the government breached a plea agreement.

F.3d 1427, 1428 (11th Cir. 1991); see also United States v. Campbell, --- F.3d ---, 2007 WL 9324 *2 (11th Cir. Jan. 3, 2007) (holding that district court's post-sentencing question "Is there anything further?" failed to satisfy Jones). If "anything further" was insufficient post-sentencing in Snyder (and our recent Campbell decision), we cannot discern how the exact same inquiry in the instant case, but this time prior to sentencing, would satisfy Jones.

Moreover, the violation was not a mere "technical" Jones violation since the record is not sufficient for meaningful appellate review. In the case at bar, the district court did not solicit any objections after it imposed Mancilla's sentence and thereby violated Jones by not eliciting fully articulated objections to the sentence or the manner in which it was pronounced. Like in Snyder, after the court inquired whether there was "anything else," no objections were made. And the record before us simply does not allow for meaningful appellate review since the objection Mancilla asserts -- that the government breach the plea agreement by failing to inform the court of Mancilla's cooperation -- was not mentioned during the sentencing hearing. See United States v. Holloway, 971 F.2d 675, 681 (11th Cir. 1992) (where defendant did not object to PSI or to his sentence at the sentencing hearing, holding that district court's failure to elicit objections was not a mere "technical" violation of Jones, and sentencing record was not sufficiently

10

developed for to review); cf. United States v. Cruz, 946 F.2d 122, 124 (11th Cir. 1991) (reviewing technical Jones claim where record was sufficient for appellate review because, at the sentencing hearing, Cruz objected to the district court's calculation of the amount of drugs used to determine his guideline range, which was the same claim he raised on appeal).

Accordingly, because the record with respect to the government's obligations under the plea agreement was not developed before the district court, we vacate and remand for imposition of sentence consistent with Jones.

**VACATED AND REMANDED.**